|     |                                                              |                                       |
| --- | ------------------------------------------------------------ | ------------------------------------- |
|     | **UNITED STATES DISTRICT COURT**                             |                                       |
|     | **DISTRICT OF NEVADA**                                       |                                       |

| Herbert Moreira-Brown, | 2:16-cv-02002-JAD-VCF |
| --- | --- |
|     Plaintiff | **Order Dismissing All Claims** |
| v. | [ECF No. 7, 34, 73] |
| Las Vegas Review Journal, Inc. et al., | |
|     Defendants | |

      Maryland attorney April Ademiluyi sued Nevada attorney David Phillips in Maryland, alleging that Phillips and New York attorney Herbert Moreira-Brown drugged and sexually assaulted her and an unnamed colleague at a conference in Florida.[1] After Phillips successfully had the case transferred to Nevada, journalist Carri Geer Thevenot caught wind of it and reported on the allegations in the *Las Vegas Review-Journal* (*LVRJ*).[2] Claiming that the allegations against him in Ademiluyi's suit are false and that Thevenot's article further defamed him and caused him emotional distress, Moreira-Brown filed this action against Ademiluyi, Thevenot, and the *LVRJ* for defamation and intentional and negligent infliction of emotional distress.[3]

      All defendants move to dismiss.[4] Because I find that this court lacks personal jurisdiction over Ademiluyi, and I conclude that Moreira-Brown's claims against Thevenot and the LVRJ (the Media Defendants) are barred by Nevada's anti-SLAPP laws, I grant the motions to dismiss in part, dismiss all claims, and close this case.

---

[1] ECF No. 7-4.

[2] ECF No. 25 at 33.

[3] ECF No. 1.

[4] ECF No. 7, 34. I find both motions suitable for disposition without oral argument. L.R. 78-1.

**Discussion**

**A.     April Ademiluyi's Motion to Dismiss**

Ademiluyi offers two arguments for dismissal: (1) this court lacks personal jurisdiction over her and (2) the communications on which Moreira-Brown's claims are based are privileged and not actionable.[5]  Because I find that this court lacks personal jurisdiction over Ademiluyi, I grant the motion on that basis and do not reach her remaining arguments.

The due-process clause of the Fourteenth Amendment limits a court's power to bind a nonresident defendant to a judgment in the state in which it sits.[6]  As the United States Supreme Court explained in the pathmaking *International Shoe* opinion, "[a]lthough a non resident's physical presence within the territorial jurisdiction of the court is not required" for the exercise of personal jurisdiction, "the nonresident generally must have 'certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"[7]

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction."[8]  Moreira-Brown does not contend that Ademiluyi is subject to the general jurisdiction of this court based on systematic contacts.  His arguments suggest specific jurisdiction: he argues that "[t]he instant action arises directly out of [Ademiluyi's] acts in [Nevada], both by virtue of the suit against Phillips, in

---

[5] ECF No. 34.

[6] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).  Because Nevada's long-arm statute, Nev. Rev. Stat. § 14.065, reaches the limits of due process established by the United States Constitution, *Viega GmbH v. Eighth Jud. Dist. Ct.*, 328 P.3d 1152, 1156 (Nev. 2014), I apply the federal jurisdictional analysis.  *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) ("When no federal statute governs personal jurisdiction, the district court applies the law of the forum state.").

[7] *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations and ellipsis omitted).

[8] *Boschetto,* 539 F.3d at 1016.

which [Moreira-Brown] is mentioned, and of course, going beyond that by defaming [him] in a Las Vegas newspaper article."[9]

Specific jurisdiction depends on an "activity or an occurrence that takes place in [or is purposely directed at] the forum State and is therefore subject to the State's regulation."[10] "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"[11] In the Ninth Circuit, we apply the three-prong test from *Schwarzenegger v. Fred Martin Motor Company* for analyzing a claim of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct [her] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [s]he purposefully avails [her]self of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.[12]

"The plaintiff bears the burden of satisfying the first two prongs of the test. If [he] fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state."[13] When a district court acts on a defendant's motion to dismiss for lack of personal jurisdiction without holding a hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand" the challenge.[14] Because I find that an evidentiary hearing would not change the outcome of this motion, my inquiry focuses on whether Moreira-Brown has made a prima facie

---

[9] ECF No. 43 at 9.

[10] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

[11] *Id.*

[12] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

[13] *Id.* (internal citations omitted).

[14] *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

showing that the court has jurisdiction over Ademiluyi, and I accept all uncontroverted facts as true.[15]

### 1. Ademiluyi did not waive her personal-jurisdiction arguments by accepting service.

As his first line of defense against Ademiluyi's personal-jurisdiction challenge, Moreira-Brown notes that "Ademiluyi executed a waiver of service" and cites a vacated district court decision for the proposition that "a waiver of service establishes personal jurisdiction over" the waiving defendant.[16] This principle—let alone this quote—appears nowhere in the case that Moreira-Brown cites for this proposition. Plus, it's just wrong. FRCP 4(d)(5) expressly states that "[w]aiving service of a summons does not waive any objection to personal jurisdiction or to venue."[17] So Ademiluyi did not lose her personal-jurisdiction objection by waiving service of process.

### 2. Ademiluyi did not waive her jurisdictional challenge by maintaining a lawsuit in this forum against Phillips.

Moreira-Brown next meets Ademiluyi's jurisdictional challenge by pointing to two acts that she had to know "were acts undertaken in this forum with predictable consequences."[18] The first act is Ademiluyi's prosecution of her lawsuit against Phillips. "If the Defendant resorts to the Courts of the forum state as plaintiff," he reasons, "it must be subject to the jurisdiction of the Federal Court as defendant in the present case."[19] But I cannot conclude that Ademiluyi's maintenance of her lawsuit against Phillips in this forum subjects her to Moreira-Brown's suit here. Although "there is nothing unfair, or violative of due process, about requiring a party that

---

[15] *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

[16] ECF No. 43 at 8 (purporting to quote *Huffy Corp. v. Overlord Indus.*, 246 F. Supp. 2d 1093 (D. Nev. 2003), vacated at 2003 WL 24107758 (July 3, 2003)).

[17] Fed. R. Civ. P. 4(d)(5).

[18] ECF No. 43 at 9.

[19] ECF No. 43 at 11.

4

has affirmatively sought the aid of our courts with regard to a particular transaction to submit to jurisdiction in the same forum as a defendant with regard to the same transaction with the same party,"[20] this rule does not apply here.

First, the "same party" element is lacking because Ademiluyi did not sue Moreira-Brown, just Phillips. But more importantly, Ademiluyi did not seek the affirmative aid of this forum. Ademiluyi filed her lawsuit against Phillips in the U.S. District Court for the District of Maryland.[21] On Phillips's motion to dismiss, the court transferred the case to this district because Phillips lived in Nevada.[22] Ademiluyi took affirmative action in Nevada only after that suit was transferred from her chosen forum—Maryland. As the Ninth Circuit recognized in *Dow Chemical Company v. Calderon*,[23] finding that participation in another forum-based lawsuit waives a personal-jurisdiction objection requires "that the party objecting to jurisdiction . . . was also *affirmatively* availing itself of the relevant forum."[24]

In *Calderon*, the objectors had defended other cases on their merits, "[b]ut that choice was made only *after* they were haled into the district court. . . ."[25] So the court refused to find waiver, reasoning, "[w]ithout an independent affirmative decision to seek relief in our courts, there can be no imputation of a conscious decision to settle all aspects of a dispute here."[26] Like the defendants in *Calderon*, Ademiluyi did not make "a conscious decision to settle all aspects" of this dispute in Nevada. So I do not find that she waived her personal-jurisdiction challenge in this case by following her suit against Phillips to this forum after the Maryland court transferred

---

[20] *Dow Chemical Co. v. Calderon*, 422 F.3d 827, 835 (9th Cir. 2005).

[21] *See* 2:14-cv-507-MMD-CWH, ECF No. 1.

[22] *See* 2:14-cv-507-MMD-CWH, ECF No. 17.

[23] *Calderon*, 422 F.3d at 835.

[24] *Id*.

[25] *Id*. at 835–36.

[26] *Id*. at 836.

5

it here.[27]

### 3. Moreira-Brown has not shown that his claim against Ademiluyi arises out of her forum-related activities.

The second act that Moreira-Brown claims caused Ademiluyi to submit to the personal jurisdiction of the Nevada courts is that "she transacted business" by "speaking to a reporter Nevada."[28] But Moreira-Brown has not shown that this contact was jurisdictionally meaningful. A review of the article reveals that all of Ademiluyi's allegations against him and Phillips were plucked from the lawsuit or police report, not based on statements that Ademiluyi made to the reporter.[29] The only information that may have come directly from Ademiluyi to the reporter is found in the paragraph that reads:

> Ademiluyi has had a Maryland law license since 2008. She said she is self-employed and works part time as outside counsel for a gaming company based in Canada. The Las Vegas Review-Journal typically does not name sexual assault victims, but Ademiluyi has agreed to be identified in this article.[30]

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."[31] Even if I presume that there was some contact (telephonic, e-mail, etc.) by which Ademiluyi conveyed this information and consent to the *LVRJ* reporter, this information itself does not give rise to Moreira-Brown's claims, which arise from the allegations in the complaint and police report.

---

[27] Nor can Phillips be the anchor that tethers Ademiluyi to Nevada. "Due process requires that a defendant be haled into court in a forum State based on [her] own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts [s]he makes by interacting with other persons affiliated with the State." *Walden*, 134 S. Ct. at 1123 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "A defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Id*.

[28] ECF No. 43 at 9–10.

[29] *See generally* ECF No. 25 at 34–38.

[30] *Id*. at 34.

[31] *Walden*, 134 S. Ct. at 1121.

Evaluating Ademiluyi's relationship with Nevada yields an insufficient basis for personal jurisdiction. Ademiluyi is a Maryland resident, who sued in Maryland a lawyer whom she met at a conference in Florida, over events that she alleges occurred in Florida. But for the fact that the defendant lawyer—Phillips—happened to be a Nevada resident and successfully moved the Maryland court to transfer Ademiluyi's lawsuit to Nevada, Ademiluyi would have had no connection to Nevada. Phillips is also the only meaningful bridge connecting Moreira-Brown to Nevada.

The nature of the claims against Ademiluyi further illustrates the lack of a forum connection. Moreira-Brown alleges that he "has suffered and continues to suffer severe injury to his reputation, his professional standing as a member of the bar, has suffered and continues to suffer severe emotional distress affecting personal and familial relationships,"[32] but none of these injuries are felt in Nevada or caused by conduct of Ademiluyi in Nevada. Indeed, in decrying the Media Defendants' choice to reference him in an *LVRJ* article primarily focused on Phillips's troubles, Moreira-Brown inadvertently makes this point. He stresses that he has "never practiced law in the state of Nevada," has never "worked professionally with David Phillips," is "unknown in the state of Nevada," and was not "named as a defendant in any lawsuit brought by Ademiluyi."[33] And although "Ademiluyi alleges . . . that Jane Doe was sexually assaulted by" him, he swears that "Jane Doe has never confirmed [that] to" anyone in Nevada.[34] And he attests that "the Nevada public can have no interest in Herbert Moreira-Brown, an out of state attorney who simply attended a conference with Phillips and the defendants Ademiluyi and Jane Doe."[35]

The Supreme Court's recent specific-jurisdiction jurisprudence demonstrates that Ademiluyi's challenged conduct does not sufficiently connect her to Nevada. In *Walden v.*

---

[32] ECF No. 1 at 1.

[33] ECF No. 43 (Moreira-Brown affidavit) at ¶ 4.

[34] *Id*.

[35] ECF No. 25 at ¶ 16.

*Fiore*, the High Court stressed that "the defendant's conduct . . . must form the necessary connection with the forum State"[36] and relied on *Calder v. Jones* to illustrate the type of contacts that are jurisdictionally relevant. In *Calder*, the Court found California to be "the focal point" of an allegedly libelous news story about actress Shirley Jones. Though the story originated from the *National Enquirer* in Florida, the Court found that "[i]t impugned the professionalism of an entertainer whose television career was centered in California," the "article was drawn from California sources, and the brunt of the harm, in terms of both [Jones's] emotional distress and the injury to her professional reputation, was suffered in California."[37]

This case presents the converse of *Calder*. Although Moreira-Brown's lawsuit was triggered by an *LVRJ* article written in Nevada, "the focal point" of the story and the harm, as far as Moreira-Brown and this lawsuit are concerned, is elsewhere. Moreira-Brown is an attorney in, and resident of, New York;[38] the article—to the extent it relates to Moreira-Brown—is drawn from sources in Maryland, Florida, and New York; and the alleged injury to his reputation and his familial relationships would be suffered in New York. In short, the effects of the conduct that forms the basis for Moreira-Brown's suit against Ademiluyi are felt in New York, not Nevada.[39]

In sum, Moreira-Brown has not made a prima facie case that Ademiluyi's suit-related conduct has a substantial connection with this forum. I thus grant Ademiluyi's motion to dismiss for lack of personal jurisdiction and dismiss the claims against her on this basis.

**B.** **Moreira-Brown's suit against the Media Defendants must be dismissed under Nevada's anti-SLAPP suit laws.**

"SLAPP lawsuits abuse the judicial process by chilling, intimidating, and punishing

---

[36] *Walden*, 134 S. Ct. at 1122.

[37] *Calder v. Jones*, 465 U.S. 783, 788–89 (1984) (cited with approval in *Walden*, 134 S. Ct. at 1123).

[38] ECF No. 25 at ¶ 1.

[39] *See Calder*, 465 U.S. at 789–90 (finding that the National Enquirer "knew that the brunt of that injury would be felt by respondent in the State in which she lives and works").

individuals for their involvement in public affairs."[40] To curb these abusive lawsuits, Nevada's legislature has adopted anti-SLAPP laws that immunize protected speakers from suit. Codified at NRS 41.660 et seq., Nevada's anti-SLAPP statutes permit a defendant to bring a special motion to dismiss an action "brought against a person based upon a good faith communication in furtherance of the right . . . to free speech in direct connection with an issue of public concern."[41] This procedural mechanism "filters unmeritorious claims in an effort to protect citizens from costly retaliatory lawsuits arising from their right to free speech under both the Nevada and Federal Constitutions."[42]

The parties' burdens when litigating a special motion under Nevada's anti-SLAPP statute were clarified by the Nevada Supreme Court this summer in *Delucchi v. Songer*.[43] The moving party must first establish by a preponderance of the evidence that the claim challenges a good-faith "communication in furtherance of the right . . . to free speech in direct connection with an issue of public concern."[44] The burden then shifts to the plaintiff to establish "by clear and convincing evidence a probability of prevailing on the claim."[45] "If the district court determines that the plaintiff has shown by clear and convincing evidence a likelihood of succeeding on the merits, the determination on the special motion has no effect on the remainder of the proceedings."[46] But if the court grants the special motion to dismiss, "the dismissal operates as

---

[40] *John v. Douglas Cty. Sch. Dist.*, 219 P.3d 1276, 1281 (Nev. 2009), superseded by statute on other grounds as stated in *Shapiro v. Welt*, 389 P.3d 262, 266 (Nev. 2017).

[41] Nev. Rev. Stat. § 41.660(1)(a).

[42] *John*, 219 P.3d at 1282.

[43] *Delucchi v. Songer*, 396 P.3d 826 (Nev. 2017).

[44] *Delucchi*, 396 P.3d at 831 (quoting Nev. Rev. Stat. § 41.660(3)(a)).

[45] *Id*. (quoting Nev. Rev. Stat. § 41.660(3)(b)).

[46] *Id*. (quoting Nev. Rev. Stat. § 41.660(3)(c)(1)–(2)).

1 | an adjudication upon the merits."[47]

### 1. Moreira-Brown's claims challenge a good-faith communication in furtherance of the right to free speech in direct connection with an issue of public concern.

Each of Moreira-Brown's claims against the Media Defendants challenges speech protected by Nevada's anti-SLAPP statutes. The introduction of his complaint captures the essence of all claims: "This is an action for money damages arising from . . . the publication of a false, libelous and defamatory Article about the Plaintiff on August 24, 2014."[48] The article was written by journalist Thevenot and published in the *LVRJ*, Southern Nevada's main newspaper.[49] The article that sits at the heart of each of Moreira-Brown's claims is undoubtedly the type of classic journalism subject to First Amendment free-speech protections.[50]

But this court need not "wrestle with difficult questions of constitutional law" to determine whether Moreira-Brown's claims are barred by the anti-SLAPP laws.[51] As the *Delucchi* court held, "a defendant's conduct constitutes 'good faith communication in furtherance of the right . . . to free speech in direct connection with an issue of public concern' if it falls within one of the four categories enumerated in NRS 41.637 and 'is truthful or is made without knowledge of its falsehood.'"[52] The Media Defendants' conduct satisfies this standard.

---

[47] Nev. Rev. Stat. § 41.660(5).

[48] ECF No. 1 at 1, ¶ 1.

[49] ECF No. 25 at 33 (article).

[50] *See, e.g., Doe v. Gangland Productions, Inc.*, 730 F.3d 946, 953–54 (9th Cir. 2013) (collecting authorities and recognizing that newsgathering is protected speech under California's sister statute); *Shapiro*, 389 P.3d at 268 (noting that Nevada "look[s] to California law for guidance" on anti-SLAPP issues because their "statutes are similar in purpose and language") (internal citations omitted).

[51] *Delucchi*, 396 P.3d at 833 (quoting *City of Montebello v. Vasquez*, 376 P.3d 624, 633 (Cal. 2016)).

[52] *Id.* (citations omitted).

### a. The article is a written statement in direct connection with an issue under consideration by a judicial body.

The third category of public concerns enumerated in NRS 41.637 is a "[w]ritten or oral statement made in direct connection with an issue under consideration by a . . . judicial body, or any other official proceeding authorized by law."[53] The article falls squarely into this category. The headline of the article is "*Lawyer faces charges from Nevada's State Bar, rape allegation*," and the main subject of the article is "veteran Las Vegas lawyer David Phillips," who was the subject of seven grievances filed with the State Bar of Nevada and Ademiluyi's "unrelated . . . federal lawsuit accusing Phillips of raping her at a legal conference in 2012."[54] Moreira-Brown argues that the article's mentioning of him is not "an issue of public interest" because he "is so tangential and removed from the issue of grievance charges against Phillips as to fail the test of having a direct connection to an issue of public interest" and, at a minimum, the reporter's recounting that he "faced rape allegations in the past[,] which derailed a Congressional bid" "had no direct or even indirect connection" to Ademiluyi's suit.[55] There are two problems with Moreira-Brown's characterization: (1) Ademiluyi's complaint contains sexual-assault allegations against him, too; and (2) he views "an issue of public interest" far more narrowly than the law does.

Although Ademiluyi named Phillips as the only defendant in her lawsuit, her complaint contains the allegations that Moreira-Brown "administered a date rape drug" in her beverage and that of Jane Doe "without their knowledge and consent" and that he then "engaged in sexual intercourse with Ms. Doe."[56] She describes in her complaint the scene of the 2012 National Bar Association conference at which she claims that "Mr. Phillips and Mr. Moreira-Brown conspired

---

[53] Nev. Rev. Stat. § 41.637(3).

[54] ECF No. 25 at 34 (article at 2).

[55] *Id*. at 20–21.

[56] ECF No. 7-4 at 3.

11

to and did take" her "from the party to Mr. Phillips['s] hotel room" where he "had sexual intercourse with her while she was under the influence of the date rape drug."[57] She alleges that "Ms. Doe also reported that she lost memory but recalls Hebert [sic] Moreira Brown, Esq. taking her to his room, feeling [him] on top of her and telling him 'no, stop,' and woke up the next morning and could feel that he had sexual intercourse with her."[58] Whether it is true—as Moreira-Brown opines—that "[t]he Nevada public can have no public interest in the mentioning of a New York attorney in a suit against a Nevada attorney," Thevenot's reporting of the allegations against him qualify as "an issue of public concern" under the plain language of the statute: they are written statements "made in direct connection with an issue under consideration by a . . . judicial body. . . ."[59] And it is the statutory definition, not a colloquial understanding of it, that controls.[60]

Moreira-Brown contends that Thevenot's mentioning of his failed Congressional bid— a part of his history that does not appear in Ademiluyi's complaint—takes her article outside of the statute's protection. This argument requires the court to construe the statute too narrowly. NRS 41.637(3) protects any written "statement made in direct connection with an issue under consideration" in Ademiluyi's lawsuit.[61] The article's statement that Moreira-Brown "has faced rape allegations in the past" and that his 1998 Congressional campaign "was derailed after a different woman accused him of rape, though a grand jury later declined to indict him" is directly related to "an issue under consideration" in Ademiluyi's suit. When describing in the complaint the difficulties she had getting law enforcement to take action on her allegations, Ademiluyi suggests that police should have run a background check and that it would have revealed that

---

[57] *Id*. at 6, 23.

[58] *Id*. at 10.

[59] Nev. Rev. Stat. § 41.637(3).

[60] *Delucchi*, 396 P.3d at 833.

[61] Nev. Rev. Stat. § 41.637(3).

Moreira-Brown "had been accused of sexual assault in the past" and that he "had a history of being arrested for . . . violent crimes."[62] Even if the derailing of his Congressional bid is not specifically recounted in the complaint, this representation in the article easily qualifies as a statement made "in direct connection with" those past accusations of sexual assault.

### b. The statements were truthful or without knowledge of their falsehood.

The Media Defendants have also established that the statements in the article were truthful or not made with knowledge of their falsehood. Moreira-Brown stresses that he denies Ademiluyi's allegations, and he notes that Jane Doe has been unwilling to confirm her allegations, and that there has not even been "a semblance of police investigation." But those points attack the allegations *in the complaint*, not the statements in the article, on which NRS 41.637(3) focuses and so must I. And a careful, side-by-side comparison of Ademiluyi's complaint and Thevenot's article reveals no misrepresentations of the allegations in that lawsuit.[63] The author noted each time she was summarizing allegations from the complaint, peppering the article with "The lawsuit said," "the lawsuit alleges," and "In court papers"[64] qualifiers. The other references in the article that are not identified as sourcing from Ademiluyi's complaint were summaries of statements Moreira-Brown provided during a phone interview (none of which he contends are misconstrued) and the report that Moreira-Brown's Congressional bid was derailed after a different woman accused him of rape (which he also does not deny).[65]

---

[62] ECF No. 7-4 at 11.

[63] *Compare* ECF No. 7-4 at 2–33 *with* ECF No. 25 at 33–38.

[64] *See* ECF No. 25 at 34–36.

[65] He describes the situation as "a 1998 incident, in the Bronx where there was no indictment or actual arrest," and in which he "was falsely accused in 1998." ECF No. 25 at 6, 15. And although he complains about the "inflammatory" nature of the word "rape," he at no point denies that his Congressional campaign was derailed in 1998 after a different woman accused him of rape. *See id.* at 6, 7, 15, 21.

Instead Moreira-Brown argues that the article "belies both the good faith and lack of knowledge of falsity prerequisites" because it "fails to mention the nature of the complaint or" its 200 pages of exhibits.[66] The "nature" he's suggesting is that the "complaint is so rambling and incoherent as to warrant the suggestion that the allegations may be the product of mental illness rather than its source."[67] Having seen many a rambling complaint, I would not put Ademiluyi's in that category. And Moreira-Brown's opinion that the lawsuit is "the product of mental illness" is just that—his opinion. Thevenot's failure to characterize the lawsuit or its proponent the way Moreira-Brown perceives them does not render the article about the lawsuit untruthful or knowingly false. The story even includes Moreira-Brown's viewpoint: Thevenot reports that he "was unaware of any accusations against him" and that he insists that he "didn't have sex with anyone on that trip," "has never possessed a date rape drug and doesn't know anyone by the true name for Jane Doe. . . ."[68]

Finally, Moreira-Brown suggests that Thevenot's use of the word "rape" shows a lack of good faith because that word does not appear in the complaint "in the context of" him.[69] But the second paragraph of the complaint contains both his name and the word "rape":

> During an evening party . . . Mr. Phillips and Herbert Moreira-Brown, Esq. administered a date rape drug into the beverages of Ms. Ademiluyi and Ms. Jane Doe without their knowledge and consent and Mr. Moreira Brown engaged in sexual intercourse with Ms. Doe and Mr. Phillips engaged in sexual intercourse with Ms. Ademiluyi.[70]

And there is a handful of other allegations that can fairly be summarized as "rape" allegations, like the allegation in paragraph 31 that Ms. Doe "reported that she lost memory" but remembers

---

[66] ECF No. 25 at 22.

[67] *Id.*

[68] *Id.* at 35.

[69] ECF No. 25 at 25.

[70] ECF No. 7-4 at 3, ¶ 2.

14

"Moreira Brown, Esq. taking her to his room, feeling Mr. Moreira Brown on top of her and telling him 'no, stop,' and woke up the next morning and could feel that he had sexual intercourse with her. When she awoke, Mr. Moreira-Brown told her, 'you better not tell anybody about this.'"[71]

In sum, the Media Defendants have carried their burden to show by a preponderance of the evidence that Moreira-Brown's claims challenge a good-faith "communication in furtherance of the right . . . to free speech in direct connection with an issue of public concern."[72] So, the burden shifts to Moreira-Brown to establish "by clear and convincing evidence a probability of prevailing on" his claims.[73]

### 2. Moreira-Brown has not shown his probability of success on his defamation claim by clear and convincing evidence.

Moreira-Brown's first claim for relief is defamation. "Defamation is a publication of a false statement of fact."[74] "The general elements of a defamation claim require a plaintiff to prove: '(1) a false and defamatory statement by a defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages.'"[75]

In espousing the merits of his defamation claim, Moreira-Brown focuses on the defamatory part, stressing that the rape allegations are "so inflammatory, prejudicial and defamatory, per se," not "fair, accurate and impartial."[76] But he has not demonstrated that the

---

[71] *Id.* at 10, ¶ 31; *see also* Black's Law Dictionary at 1374 (9th ed.) (defining "rape" to include "unlawful sexual intercourse with a person who is unconscious").

[72] *Delucchi*, 396 P.3d at 831 (quoting Nev. Rev. Stat. § 41.660(3)(a)).

[73] *Id.* (quoting Nev. Rev. Stat. § 41.660(3)).

[74] *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 87 (Nev. 2002).

[75] *Id.* at 90.

[76] ECF No. 25 at 16.

Media Defendants made any false statements. To be sure, Moreira-Brown vehemently denies the accusations in Ademiluyi's complaint. But *the article* does not level the rape-drug and sexual-assault accusations against Moreira-Brown; it summarizes those allegations that Ademiluyi made in her complaint.[77] And Moreira-Brown has not shown that the article's summary contains falsities.

### a. The bulk of the article is immunized by the fair-reporting privilege.

Even if Ademiluyi's accusations in her complaint are false and the Media Defendants could bear defamation liability for republishing them,[78] that republication is protected by the fair-reporting privilege. A statement is not defamatory if it is privileged.[79] "The law has long recognized a special privilege of absolute immunity from defamation given to the news media and the general public to report newsworthy events in judicial proceedings."[80] Whether the privilege applies is a question of law.[81] "Certainly, the pleading in this case, a formal complaint, is covered under the rule of absolute privilege."[82] So, as long as the "alleged defamatory statements were a fair and accurate report of a judicial proceeding, they are absolutely privileged, and the material recited will not support a defamation suit even if the statements were made maliciously and with knowledge of their falsity."[83]

---

[77] *Compare* ECF No. 7-4 at 2–33 *with* ECF No. 25 at 33–38.

[78] *See Flowers v. Carville*, 310 F.3d 1118, 1128 (9th Cir. 2002) (describing "the venerable principle that a person who repeats a defamatory statement is generally as liable as the one who first utters it").

[79] *Lubin v. Kunin*, 17 P.3d 422, 427 (Nev. 2001).

[80] *Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 984 P.2d 164, 166 (Nev. 1999).

[81] *Dorsey v. National Enquirer, Inc.*, 973 F.2d 1431, 1435 (9th Cir. 1992) ("When there is no dispute about the material facts, the 'fair and true' issue is generally one of law [that] can be decided by the court on summary judgment.").

[82] *Sahara Gaming Corp.*, 984 P.2d at 167.

[83] *Id.*; *see also Lubin v. Kunin*, 17 P.3d at 426 (holding that "the district court correctly found that merely publishing the fact that a lawsuit alleging child abuse was filed would not be actionable").

Moreira-Brown argues that "[w]hile Ademiluyi's complaint facially meets this test, defendant's reporting does not" because "Thevenot did not present Ademiluyi's complaint, as it pertained to Moreira-Brown fairly, accurately and impartially."[84] Having carefully compared the complaint and the article, I disagree. As the Ninth Circuit recognized in *Dorsey v. National Enquirer* when applying California's analogous privilege, "an article that captures the substance of the proceedings constitutes a 'fair and true' report."[85] The media defendant need not "justify every word of the alleged defamatory material that is published. The media's responsibility lies in ensuring that the 'gist or sting' of the report—its very substance—is accurately conveyed."[86] And "courts must accord media defendants a 'certain amount of literary license' and exercise a 'degree of flexibility' in determining what is a 'fair report.'"[87]

Thevenot's article offers a fair and true report of Ademiluyi's lawsuit. Though the article delivers a painful sting, that sting is entirely derivative of the ugly allegations of reprehensible conduct described in the complaint. And though Ademiluyi did not use the word "rape" to describe the sexual assaults she alleges in her complaint, Thevenot's use of the word does not render her report unfair. Very little literary license is required to transform the allegation that "Moreira-Brown, Esq., administered a date rape drug into the beverage[] of . . . Ms. Jane Doe without [her] knowledge and consent and Mr. Moreira Brown engaged in sexual intercourse with Ms. Doe"[88] into a "rape" allegation.[89] The fair-reporting privilege immunizes the Media

---

[84] ECF No. 25 at 24–25.

[85] *Dorsey*, 973 F.2d at 1436; *see also Lubin*, 17 P.3d at 427 (relying on *Dorsey* for the "fair and true" standard).

[86] *Dorsey*, 973 F.2d at 1436 (quoting *McClatchy Newspapers v. Superior Court*, 189 Cal. App. 3d 961, 975 (Cal. Ct. App. 1987)).

[87] *Id*. (quoting *McClatchy Newspapers*, 189 Cal. App. 3d at 976).

[88] ECF No. 7-4 at ¶ 2.

[89] *See, e.g., Binder v. Triangle Publications, Inc.*, 275 A.2d 53, 58 (Pa. 1971) (noting that "[a]n action for defamation cannot be premised solely on defendant's style or utilization of vivid words

17

1 | Defendants from suit for Thevenot's summary of Ademiluyi's lawsuit.

### b. The rest of the article is not actionable.

Not all of the article is a summary of Ademiluyi's lawsuit, however. The article goes beyond the lawsuit in two main ways with respect to Moreira-Brown.[90] First, it reports Moreira-Brown's response to the complaint: he denies the allegations. Importantly, he makes no claim that Thevenot inaccurately quoted him. Although he does complain that Thevenot failed to include in her article a photograph taken the day after the events that Ademiluyi describes,[91] I cannot conclude that the reporter's choice rendered anything about the article false, particularly when she presented Moreira-Brown's side of the story with his quoted denial.

Second, the article reports that Moreira-Brown's 1998 Congressional campaign was derailed due to rape allegations by another woman. Although Moreira-Brown thinks this history should be of no interest to the *LVRJ*'s readers, he nevertheless does not dispute it as false.[92] Indeed, it appears that the thrust of his grievance is that he was mentioned in Thevenot's story at all when—in his assessment—he was just a bit character in Ademiluyi's complaint, and the story should have been about Phillips alone. Moreira-Brown has not demonstrated by clear and convincing evidence that he will prevail on his defamation claim for any portion of Thevenot's

---

in reporting a judicial proceeding," and finding characterization of relationships as a "bizarre love triangle" not defamatory).

[90] The article also recounts statements by Jane Doe, *see* ECF No. 25 at 35, but Moreira-Brown does not criticize Thevenot's report of those statements.

[91] ECF No. 25 at 25. Moreira-Brown did not attach this photograph to his opposition, but he moves to supplement his opposition to include it. ECF No. 73. Good cause appearing, I grant that motion. I caution Mr. Moreira-Brown, however, that requests for relief must be in the form of a motion, not the form of a letter. *See* L.R. IA 7-1(b) ("All communications with the court must be styled as a motion . . . ").

[92] *See supra* at § B(1)(a). He states in his affidavit in support of his opposition that he "was falsely accused in 1998," ECF No. 25 at 6, ¶ 14, suggesting that he did, in fact, face rape allegations in 1998. And he makes no effort to deny that "[h]is 1998 campaign for a seat in the U.S. House of Representatives from New York was derailed after a different woman accused him of rape, though a grand jury later declined to indict him." ECF No. 25 at 35.

article.

### 3. Moreira-Brown has not shown a probability of success on his emotional-distress claims.

Nor has Moreira-Brown shown that he will prevail on his claims for negligent or intentional infliction of emotional distress. To recover for intentional infliction of emotional distress, Moreira-Brown must show: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation."[93] Negligent infliction of emotional distress requires "either a physical impact must have occurred or, in the absence of physical impact, proof of 'serious emotional distress' causing physical injury or illness. . . ."[94]

Moreira-Brown has not even attempted to meet this burden. His affidavit does not contain even a hint that he has suffered severe emotional distress as a result of the article, let alone distress causing the physical injury or illness necessary to state a negligent-infliction-of-emotional-distress claim.[95] His argument in opposition to the motion to dismiss on these claims consists of a few conclusory sentences: "Plaintiff's description of the contents of the article which reasonably viewed in context satisfies the requirement of extreme and outrageous conduct. . . . Defendants [sic] article insofar as it can reasonably be construed as implying that Moreira-Brown is a sexual predator and has a history of such behavior evinces extreme and outrageous conduct. Both defendants are liable for the damages resulting from such conduct."[96] He does not address the Media Defendants' argument that the emotional-distress and physical-injury components are missing. And even if I were to find that these conclusory statements satisfy the

---

[93] *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000) (quoting *Star v. Rabello*, 625 P.2d 90, 91–92 (Nev. 1981) (citations omitted)).

[94] *Olivero* (quoting *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386–87 (Nev. 1998)).

[95] *See* ECF No. 25 at 2–9.

[96] ECF No. 25 at 30.

extreme-and-outrageous-conduct element, Moreira-Brown has not addressed the merits of the other elements. Moreira-Brown has thus not shown a likelihood of prevailing on any claim.

Accordingly, I find that all of plaintiffs' claims against the Media Defendants must be dismissed under NRS 41.637(3). So I dismiss all remaining claims with prejudice on this basis, and I do not reach the Media Defendants' remaining arguments.

## Conclusion

IT IS THEREFORE ORDERED that Herbert Moreira-Brown's request to supplement his opposition to Ademiluyi's motion to dismiss **[ECF No. 73] is GRANTED**;

IT IS FURTHER ORDERED that April Ademiluyi's Motion to Dismiss **[ECF No. 34] is GRANTED; all claims against April Ademiluyi are DISMISSED for lack of personal jurisdiction**;

IT IS FURTHER ORDERED that the Las Vegas Review Journal, Inc. and Carri Geer Thevenot's Motion to Dismiss **[ECF No. 7] is GRANTED in part and DENIED in part** as stated in this order. Because I GRANT the Media Defendants' motion to dismiss under NRS 41.637, I do not reach their remaining arguments. **All claims against the Las Vegas Review Journal, Inc. and Carri Geer Thevenot are DISMISSED with prejudice under NRS 41.637.**

The Clerk of Court is directed to **CLOSE THIS CASE**.

DATED: September 18, 2017.

_____
Jennifer A. Dorsey
United States District Judge