# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Herbert Moreira-Brown,

    Plaintiff

v.

Las Vegas Review Journal, Inc., et al.,

    Defendants

Case No.: 2:16-cv-02002-JAD-VCF

**Order Granting the Media Defendants' Motion to Dismiss and Denying Moreira-Brown's Motions for Reconsideration and to Extend Time**

[ECF Nos. 99, 101, 104]

Journalist Carri Geer Thevenot and the *Las Vegas Review-Journal* move to dismiss New York attorney Herbert Moreira-Brown's sole-remaining claim that they published a defamatory article about him. The article focused on a lawsuit brought by Maryland attorney April Ademiluyi against another lawyer, David Lee Phillips, alleging that he and Moreira-Brown sexually assaulted her. I dismissed the defamation claim against these media defendants under a provision of Nevada's anti-SLAPP statute that covers statements related to judicial proceedings, but the Ninth Circuit vacated that judgment when the Supreme Court of Nevada in *Patin v. Ton Vinh Lee* adopted a new rule for applying that statutory provision.

On remand, I find that the article no longer qualifies for protection under the judicial-proceedings provision after *Patin*, so I vacate my prior dismissal in that regard. But Moreira-Brown's claim still must be dismissed under the public-interest prong of the anti-SLAPP statute or because the statements he complains about are not false. So I grant the motion to dismiss the defamation claim and again close this case.

**Backstory**

In 2014, Ademiluyi sued Phillips in Maryland, alleging that he and Moreira-Brown drugged and sexually assaulted her and an unnamed colleague at a conference in Florida.[1]  She alleged that Phillips and Moreira-Brown "administered a date[-]rape drug into the beverages of . . . Ademiluyi and [an unnamed colleague] without their knowledge and consent and . . . Moreira[-]Brown engaged in sexual intercourse with [the unnamed colleague]."[2]  Though the complaint does not name Moreira-Brown as a defendant, it references him several other times as a participant in the alleged assault.[3]

After Ademiluyi's case was transferred to Nevada, Thevenot reported on the allegations in the *Review-Journal*.[4]  The article, headlined "Lawyer faces charges from Nevada's State Bar, rape allegation," reported on the state bar's investigation of grievances against Phillips and Ademiluyi's complaint against him.[5]  Although the focus of the article is Phillips, there are several statements about Moreira-Brown, including statements reporting on the allegations of his involvement in the sexual assault in the complaint; quotes and information that Moreira-Brown gave the defendants in interviews; and a reference to prior sexual-assault allegations having "derailed" his 1998 run for Congress in New York.[6]

---

[1] ECF No. 7-4 at ¶ 2 (Ademiluyi's complaint).

[2] *Id.*

[3] *Id.* at ¶¶ 12, 19, 24, 25, 27, 31, 32.

[4] ECF No. 7-1 (the article).

[5] *Id.* at 2–3.

[6] *Id.* at 3–4.

In response to Ademiluyi's complaint and the article, Moreira-Brown brought this suit with several claims, including one for defamation against the media defendants.[7]   In a 2017 order, I dismissed all of those claims.[8]   I held that the defamation claim was barred by Nevada's anti-SLAPP statute,[9] which limits lawsuits "brought against a person based upon a good[-]faith communication in furtherance of the right . . . to free speech in direct connection with an issue of public concern."[10]   I found that the article fell within the anti-SLAPP statute's protection for "statements made in direct connection with an issue under consideration by a . . . judicial body" under NRS 41.637(3).[11]   The media defendants argued[12]—and I additionally held—that they established that the statements in the article were truthful or not made with knowledge of their falsehood,[13] that the article's report on the allegations in Ademiluyi's complaint is immunized from defamation liability by the fair-reporting privilege,[14] and that the remainder of the article is not actionable because Moreira-Brown does not allege that its contents are false.[15]

Moreira-Brown appealed that 2017 order to the Ninth Circuit, which affirmed the dismissal of all but the defamation claim against the media defendants because the Supreme Court of Nevada adopted a new rule for applying NRS 41.637(3)'s judicial-proceedings protection in *Patin v. Lee* after that dismissal, so the panel remanded that claim for this court to

---

[7] ECF No. 1 at ¶¶ 17–40.

[8] ECF No. 75 at 20 (2017 dismissal order).

[9] *Id.*

[10] Nev. Rev. Stat. § 41.660.

[11] ECF No. 75.  The claims against Ademiluyi were dismissed for want of personal jurisdiction. *Id.* at 8.  That dismissal was affirmed on appeal.  ECF No. 91 at 2 (Ninth Circuit memorandum).

[12] ECF No. 7 (media defendants' original motion to dismiss).

[13] *Id.* at 13–15.

[14] *Id.* at 16–18.

[15] *Id.* at 18.

1  "consider *Patin* in the first instance."[16]  With the case back on remand, I entered a minute order

2  allowing the media defendants to file a renewed motion to dismiss to address the impact of *Patin*

3  on Moreira-Brown's defamation claim.[17]  They complied and now move to dismiss the

4  remaining claim, arguing primarily that *Patin*'s changes to NRS 41.637(3)'s judicial-proceedings

5  shield are irrelevant because the article remains protected under NRS 41.637(4)'s public-interest

6  prong.[18]  Moreira-Brown opposes that motion and asks me to reconsider my decision to allow

7  rebriefing in this format in the first place.[19]

8

9                                      **Discussion**

**I.     Moreira-Brown has not established a basis for reconsideration of the
10           remand briefing format.**

11           Moreira-Brown moves for reconsideration of the minute order permitting the defendants

12  to file a renewed motion to dismiss that addresses the impact of the *Patin* decision on his

13  defamation claim.[20]  A district court "possesses the inherent procedural power to reconsider,

14  rescind, or modify an interlocutory order for cause seen by it to be sufficient[,]" so long as it has

15  jurisdiction.[21]  A motion to reconsider must set forth "some valid reason why the court should

16  reconsider its prior decision" by presenting "facts or law of a strongly convincing nature."[22]

17

18  _____

[16] ECF No. 91 at 3; *see Patin v. Ton Vinh Lee*, 429 P.3d 1248 (Nev. 2018).

19  [17] ECF No. 98 (minute order directing briefing on remand).

20  [18] ECF No. 101 (media defendants' motion to dismiss on remand).

[19] ECF No. 99 (motion for reconsideration).

21  [20] *Id.*

22  [21] *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir.
    2001) (quotation and emphasis omitted); *see also Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950,
23  955 (9th Cir. 2013); LR 59-1.

    [22] *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003).

Reconsideration is appropriate if "(1) [the court] is presented with newly discovered evidence, (2) [the court] committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."[23]

Moreira-Brown fails to satisfy this standard.  He argues that the minute order exceeds the Ninth Circuit's mandate, which "did not direct the [c]ourt to permit the filing of a new [a]nti-SLAPP motion."[24]  The proper course, he contends, would have been for the "parties to brief the effect of *Patin* . . . on the [original] motion" and then for the "[c]ourt to decide whether the original motion [should] be reinstated, denied, or modified accordingly."[25]  He further argues that a defendant may bring only one anti-SLAPP motion or motion to dismiss.[26]  In pressing these arguments, Moreira-Brown points to no intervening change in the law or newly discovered evidence.  Nor does he point to any clear error: Though the Ninth Circuit remanded the defamation claim for the court to "consider *Patin* in the first instance[,]" it did not set the procedure for doing so.[27]  Permitting new motion practice, rather than re-litigating the initial motion, thus does not contravene the Ninth Circuit's mandate.  Moreira-Brown cites no authority limiting defendants to one anti-SLAPP motion or motion to dismiss.  Even if there are such limits, the remand of the prior dismissal order for the specific purpose of reconsidering it in light

---

[23] *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

[24] ECF No. 100 at 3.

[25] *Id.* at 2–3.

[26] *Id.* at 4.

[27] ECF No. 91 at 3.

of new authority puts this case on different footing, and the filing of renewed motions to dismiss on remand appears to be common practice in this circuit.[28]

Permitting a renewed motion is also not manifestly unjust in these circumstances.  Even if the media defendants were required to raise all their arguments in a single anti-SLAPP motion, their renewed motion has given them no second bite at the apple.  The arguments in their renewed motion either stay within the bounds of their initial motion's briefing or directly address *Patin*'s effect on this case.  Also, Moreira-Brown suffers no prejudice here as his response to the renewed motion addresses the media defendants' arguments.  Regardless of the vehicle for these arguments, the net result is that I am tasked with reevaluating the prior dismissal order in light of *Patin*, and the parties have had a full and fair opportunity to address any points relevant to that question.  So I deny Moreira-Brown's motion for reconsideration.

## II.    The entirety of Moreira-Brown's defamation claim either is barred by Nevada's anti-SLAPP statute or fails to state a claim for relief.[29]

As I editorialized in the 2017 order, "SLAPP lawsuits abuse the judicial process by chilling, intimidating, and punishing individuals for their involvement in public affairs."[30]  To

---

[28] *See, e.g.*, *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1037 (9th Cir. 2022) (noting that a party "filed a renewed motion to dismiss" on remand); *Howe v. Washoe Cnty. Sheriff's Off.*, 2020 WL 6262965, at *1 (D. Nev. Oct. 23, 2020) (same).

[29] Two days before Moreira-Brown's response to the defendants' motion was due, he moved for an extension of time.  ECF No. 104.  Because he submitted a timely response, I deny that motion as moot.  Even if I considered it on the merits, I would deny it because Moreira-Brown failed to show good cause for an extension.  *See* LR 26-3 ("A motion or stipulation to extend any date set by the discovery plan, scheduling order, or other order must . . . be supported by a showing of good cause for the extension.").  I also deny his separate request for "leave to amend or supplement" his briefing because he has not shown good cause for such relief.  ECF No. 106 at 14.

[30] *John v. Douglas Cnty. Sch. Dist.*, 219 P.3d 1276, 1281 (Nev. 2009), superseded by statute on other grounds as stated in *Shapiro v. Welt*, 389 P.3d 262, 266 (Nev. 2017).

1    curb these abusive lawsuits, Nevada's legislature has adopted anti-SLAPP laws that immunize

2    protected speakers from suit by permitting a defendant to bring a special motion to dismiss an

3    action "brought against a person based upon a good[-]faith communication in furtherance of the

4    right . . . to free speech in direct connection with an issue of public concern."[31]  This procedural

5    mechanism "filters unmeritorious claims in an effort to protect citizens from costly retaliatory

6    lawsuits arising from their right to free speech under both the Nevada and [f]ederal

7    [c]onstitutions."[32]

8           Motions brought under Nevada's anti-SLAPP statute follow a two-step, burden-shifting

9    framework.  At the first step, courts "evaluate 'whether the moving party has established, by a

10   preponderance of the evidence,' that he or she made the protected communication in good

11   faith."[33]  A party makes that showing if the communication falls into one of the four categories

12   in NRS 41.637 and was truthful or made without knowledge of its falsity.[34]  Relevant here, NRS

13   41.637(3) covers "statement[s] made in direct connection with an issue under consideration by a

14   . . . judicial body,"[35] and NRS 41.637(4) covers "[c]ommunication[s] made in direct connection

15   with an issue of public interest in a place open to the public or in a public forum [that are]

16   truthful or [are] made without knowledge of [their] falsehood."[36]  If the movant prevails at the

17

18

19

---

20   [31] Nev. Rev. Stat. § 41.660(1)(a).

     [32] *John*, 219 P.3d at 1282.

21   [33] *Rosen v. Tarkanian*, 453 P.3d 1220, 1223 (Nev. 2019) (quoting Nev. Rev. Stat.
     § 41.660(3)(a)).

22   [34] *Delucchi v. Songer*, 396 P.3d 826, 833 (Nev. 2017).

23   [35] Nev. Rev. Stat. § 41.637(3).

     [36] Nev. Rev. Stat. § 41.637(4).

first step, the burden then shifts to the plaintiff to "demonstrate[] with prima facie evidence a probability of prevailing on the claim."[37]

### A. NRS 41.637(3) no longer shields the article after *Patin*.

#### 1. *Patin* requires that the statement be made to people with an interest in the litigation.

In *Patin*, the Supreme Court of Nevada considered whether NRS 41.637(3) protected Patin's law firm's website post summarizing its jury-trial win in a malpractice case against a dental office and two dentists, Drs. Lee and Traivai.[38]  In that underlying malpractice case, the jury found that the dental office and Traivai acted negligently but determined that Lee did not.[39] The trial court vacated the jury's verdict, and Traivai and the office appealed.[40]  Lee sued Patin for defamation, claiming that the post's subtitle—"PLAINTIFF'S VERDICT $3.4M, 2014 Description: Singletary v. Ton Vinh Lee, DDS, et al."—falsely implied that Lee was negligent.[41] Patin responded with an anti-SLAPP motion, arguing that the post was a "statement made in direct connection with an issue under consideration by a . . . judicial body" under NRS 41.637(3).[42]  The district court denied Patin's motion, reasoning that the post fell outside of NRS 41.637(3)'s protection because it did not reference the pending appeal.[43]

---

[37] *Rosen*, 453 P.3d at 1223 (quoting Nev. Rev. Stat. § 41.660(3)(b)).

[38] *Patin*, 429 P.3d at 1249.

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.* at 1249–50.

The Court affirmed.[44]  In doing so, it framed the question as "whether Patin's statement regarding the jury verdict in the dental malpractice case [wa]s 'a statement made in direct connection with an issue under consideration by a . . . judicial body' under NRS 41.637(3)."[45] Lacking Nevada precedent to answer that question, the Court first looked to California's analogous anti-SLAPP law and cases interpreting it, relying heavily on the California appellate court's opinion in *Neville v. Chudacoff* to discern the meaning of "in connection with."[46]  In *Neville*, the court surveyed three cases on the meaning of that phrase.  One held that "anti-SLAPP protection" does not extend to "any act having any connection, however remote" or "statements 'bearing no relationship' to 'the claims under consideration'" and so did not extend to an attorney's statements about a security broker's personal life that the attorney made in investigating the broker for a prior securities-related arbitration.[47]  The second case held that such protection did extend to a homeowners' association's letter informing its residents of its lawsuit against a rule-flouting resident "because the letter was sent in connection with litigation."[48]  And the third held that such protection extended to a company email informing customers who had previously sat for depositions that its litigation adversary paid the company's former employees to lie, reasoning that the email was a "litigation update" to "individuals '[with] some involvement' in the litigation."[49]  The *Neville* court also considered cases on the litigation privilege—a separate bar against claims based on litigation-related conduct—because that

---

[44] *Id.* at 1252.

[45] *Id.* at 1250.

[46] *Id.*; *see Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1264 (2008).

[47] *Neville*, 160 Cal. App. 4th at 1264 (citing *Paul v. Friedman*, 95 Cal. App. 4th 853 (2002)).

[48] *Id.* (citing *Healy v. Tuscany Hills Landscape & Recreation Corp.*, 137 Cal. App. 4th 1 (2006)).

[49] *Id.* (citing *Contemp. Servs. Corp. v. Staff Pro Inc.*, 152 Cal. App. 4th 1043 (2007)).

privilege and the judicial-proceedings anti-SLAPP provision both "protect the right of litigants to the utmost freedom of access to the courts without the fear of being harassed . . . by derivative tort actions."[50]

The *Neville* court synthesized these cases into the rule that statements are made "in connection with an issue under consideration . . . by a judicial body" only if they "(1) relate to the substantive issues in the litigation and (2) [are] directed to persons having some interest in the litigation."[51]  Applying that rule to the facts in *Neville*—in which a company sent a letter warning its customers not to do business with a former employee who stole the company's customer list and solicited them for a competing business—the court held that the letter qualified for protection because it "related directly to the company's forthcoming claims against the fired employee and was directed to the company's customers, who the company reasonably believed would have an interest in th[at] . . . litigation."[52]

Finding this analysis persuasive, the Supreme Court of Nevada in *Patin* adopted *Neville*'s two-prong rule for NRS 41.637(3),[53] applied it to Patin's post, and concluded that it was not protected by the judicial-proceedings section of this anti-SLAPP statute because it met neither prong of the new rule.[54]  As to the first prong, the Court held that, "even if the statement had mentioned the pending appeal, it did not relate to any substantive issues in the appeal or the district court proceedings."[55]  In doing so, it rejected Patin's argument that simply referencing

---

[50] *Patin*, 429 P.3d at 1251 (citing *Neville*, 160 Cal. App. 4th at 1265).

[51] *Id.* (citing *Neville*, 160 Cal. App. 4th at 1265).

[52] *Id.* (citing *Neville*, 160 Cal. App. 4th at 1267).

[53] *Id.* at 1251–52.

[54] *Id.* at 1252.

[55] *Id.*

the jury verdict put the post within NRS 41.637(3)'s purview.[56]  The Court reasoned that to accept that argument "would essentially [provide] anti-SLAPP protection to 'any act having any connection, however remote, with a judicial proceeding'" and that "[d]oing so would not further the . . . statute's purpose of 'protecting the rights of litigants to the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.'"[57]  On the second prong, the Court held that the website post "was not 'in direct connection with an issue under consideration by a . . . judicial body' for purposes" of NRS 41.637(3) because it found that "the statement was not directed to any specific person or group, let alone to someone with an interest in the litigation."[58]  So, after *Patin*, a report's loose connection with a lawsuit is not enough to garner the protection of NRS 41.637(3); it must be about substantive issues in a case and directed to persons with an interest in that case.

### 2.    *The article was not communicated to a specific group of people with an interest in Ademiluyi's lawsuit.*

Though I held in the prior dismissal that the article's statements were "in direct connection with" Ademiluyi's complaint,[59] whether they relate to "*substantive* issues in the litigation" and thus satisfy *Patin*'s new first prong is a closer question.  Even if they do, however, they cannot meet *Patin*'s second prong because this article was directed well beyond anyone with a true interest in the case.  Defendants argue that the article is "directed to the general public, [which has] an interest in attorney conduct and in scrutinizing judicial proceedings."[60]

---

[56] *Id.* at 1251.

[57] *Id.* at 1251–52 (quoting *Paul*, 95 Cal. App. 4th at 866).

[58] *Id.* at 1252.

[59] ECF No. 75 at 11–13.

[60] ECF No. 107 at 5 n.3.  .

1  But the *Patin* court held that the website post—presumably also directed at the general public—

2  was not covered by NRS 41.637(3) because it "was not directed to any specific person or

3  group."[61]  Indeed, the "general public" is the opposite of a "specific person or group."  And as

4  with the website post in *Patin*, placing this article under NRS 41.637(3)'s protection would not

5  promote the anti-SLAPP statute's purpose of "protect[ing] the rights of litigants to the utmost

6  freedom of access to the courts."[62]  The media defendants were not parties to the lawsuit, and

7  their statements were not directed to individuals with a direct role in the litigation—facts that

8  distinguish these defendants from the parties in the cases discussed in *Patin* or the cases that

9  have followed it.[63]

10       The defendants' attempts to distinguish *Patin* are unavailing.  They argue that, unlike the

11  dentist in *Patin*, they "had no self-serving motive" and "accurately reported the allegations."[64]

12  Though the media defendants' motive may be pure, neither *Patin*'s rule nor rationale was based

13  on the defendants' motivation.  And whether the article is accurate is irrelevant to *Patin*'s two-

14  prong test.  So I find that the article no longer qualifies for protection under NRS 41.637(3) as

15  reimagined in *Patin*.

---

19  [61] *Patin*, 429 P.3d at 1252.

20  [62] *Id.* at 1251 (quoting *Neville*, 160 Cal. App. 4th at 1263).

21  [63] *See, e.g.*, *Paul*, 95 Cal.App.4th at 853 (noting that the attorney disclosed details in connection with arbitration); *Healy*, 137 Cal.App.4th at 1 (noting that the homeowners' association sent the letter in connection with litigation); *Contemporary Services Corporation* 152 Cal.App.4th at

22  1055 (noting that the email was sent to individuals "who had some involvement in the parties' litigation"); *Smith v. Craig*, 2020 WL 1065715, at *1 (D. Nev. Mar. 4, 2020) (noting that the

23  allegations "stem from [the party's] service as a witness in litigation").

[64] ECF No. 107 at 6.

**B.    The article's reporting on Ademiluyi's lawsuit is protected by the public-interest provision of Nevada's anti-SLAPP statute.**

        ***1.    Reports on the allegations in Ademiluyi's complaint are matters of public interest.***

The conclusion that the article no longer qualifies under the anti-SLAPP statute's litigation provision after *Patin* perhaps buries the lede as the bulk of the article is nevertheless shielded by subsection 4 of the law, which covers a "[c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum[ that] is truthful or is made without knowledge of its falsehood."[65]  To fall under this public-interest protection, a statement must meet three criteria: it must be an issue of public interest, made in public, and true or made without knowledge of its falsehood.[66]  As to the first criterion, the Supreme Court of Nevada has held that "public interest is 'broadly' defined"[67] and has adopted five "guiding principles" to determine whether a public interest exists: (1) "public interest does not equate with mere curiosity"; (2) "a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest"; (3) "there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient"; (4) "the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy";

---

[65] Nev. Rev. Stat. § 41.637.

[66] *Shapiro*, 389 P.3d at 268.

[67] *Abrams*, 458 P.3d 1062, 1066 (Nev. 2020) (quoting *Coker v. Sassone*, 432 P.3d 746, 751 (Nev. 2019)).

and (5) "a person cannot turn otherwise private information into a matter of public interest
simply by communicating it to a large number of people."[68]

Considering these principles, I find that the statements reporting on the allegations in
Ademiluyi's complaint concern the public's interest in court proceedings.  The public has an
interest in news reports about such proceedings because, as the Supreme Court of Nevada has
recognized, "[a]lthough the courts are open to the public, not everyone can attend hearings," and
"[t]he news media acts as an agent of the people to inform the public [of] what transpires in the
courtroom."[69]  The same is true of legal pleadings like Ademiluyi's complaint: even though they
are generally publicly available, not everyone can or knows how to access them, and the media
helps to bridge that gap.  The Supreme Court of Nevada, in an unpublished opinion, recently
held that a statement about a defamation suit qualified as "a communication concerning matters
of public concern because the statement relates entirely to judicial proceedings about which the
public clearly has a right to know."[70]  The Court reasoned that "Nevada citizens have a right to
know what transpires in public and official legal proceedings" and that "[t]o conclude otherwise
would unduly risk undermining a policy that favors the dissemination of information to the
public about their judicial system."[71]

The article largely reported on the allegations in Ademiluyi's complaint and made that
clear by peppering the article with phrases like "[t]he lawsuit said," "in court papers," and "the
lawsuit alleges."[72]  Also, the article does not "turn otherwise private information" public because

---

[68] *Shapiro*, 389 P.3d at 268.

[69] *Sahara Gaming Corp. v. Culinary Workers Union Loc. 226*, 984 P.2d 164, 166 (Nev. 1999).

[70] *Veterans in Pol. Int'l, Inc. v. Willick*, 457 P.3d 970, *5 (Nev. 2020) (unpublished).

[71] *Id.*

[72] ECF No. 7-1 at 4.

the allegations are not private information, and there is no evidence suggesting that the defendants were trying to "gather ammunition for another round of private controversy."[73]  So I find that the article's statements reporting on the allegations in the complaint concern matters of public interest under NRS 41.637(4).

Moreira-Brown argues that the references to him are driven by "salacious curiosity" rather than public interest because he "is not an attorney in Nevada," "the article does not refer to his []courtroom conduct[,]" and he has "had no judicial proceedings in Nevada."[74]  But these arguments fail for at least three reasons.  First, although they are responsive to the defendants' contentions that the article is of public interest because it concerns attorney misconduct, I find that the public interest here is in local court matters, not attorney misconduct.  Second, Moreira-Brown's implicit argument that the anti-SLAPP statute does not protect journalists' reports on issues of interest to people living outside the geographic location where the journalists are situated (here, Las Vegas) is dubious, especially in a digital world in which people increasingly access news online.  Third, under California law, which the Supreme Court of Nevada has largely adopted in this context,[75] the "proper inquiry" is whether the article's topic, and not Moreira-Brown himself, "is connected to . . . an issue of public interest."[76]  So whether Ademiluyi's allegations concern a matter of public interest does not depend on whether there is a public interest in Moreira-Brown specifically.

---

[73] *Shapiro* 389 P.3d at 268.

[74] ECF No. 106 at 10.

[75] *See, e.g.*, *Shapiro*, 389 P.3d at 268 ("Because this court has recognized that California's and Nevada's anti-SLAPP 'statutes are similar in purpose and language,' we look to California law for guidance on this issue.") (internal citations omitted) (*quoting John*, 219 P.3d at 1281); *Patin*, 429 P.3d at 1250 ("Because no Nevada precedent is instructive on this issue, we look to California precedent for guidance.").

[76] *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 956 (9th Cir. 2013).

2.   ***The article meets the other criteria of NRS 41.637(4) and NRS 41.660.***

Aside from requiring that the communication concern a matter of public interest, NRS 41.637(4) also requires that the communication be made "in a place open to the public or in a public forum[,]" and both NRS 41.637(4) and NRS 41.660 require that the communication be "truthful or be made without knowledge of its falsehood."[77]   The article was plainly "in a place open to the public or in a public forum" as newspapers are a prototypical example of public fora.[78]   The statements also were made without knowledge of their falsehood because, as more fully discussed in the 2017 order and incorporated here, the article accurately reported on the allegations in the complaint regardless of whether those allegations themselves were true.[79]   That the media defendants "could not corroborate" the claims in the complaint and should have questioned their veracity,[80] even if true, does not establish that they had "knowledge of their falsehood."[81]   So, as to the statements about Ademiluyi's allegations, I find that the defendants have satisfied their initial burden under the two-step anti-SLAPP framework, and thus the burden

---

[77] Nev. Rev. Stat. § 41.637(4); Nev. Rev. Stat. 41.660; *see Delucchi v. Songer,* 396 P.3d 826, 833 (Nev. 2017) (holding that "a defendant's conduct constitutes 'good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern' if it falls within one of the four categories enumerated in NRS 41.637 and 'is truthful or is made without knowledge of its falsehood'").

[78] *See Kosor v. Olympia Companies, LLC*, 478 P.3d 390, 394 (Nev. 2020) (holding that "even a publication with a tightly controlled message—whether a community newsletter or, as in this case, an [homeowners' association's] election pamphlet and direct letter to . . . homeowners— may qualify as a public forum where 'it is a vehicle for communicating a message about public matters to a large and interested community.'") (quoting *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 476 (2000)).

[79] ECF No. 75 at 13–15.

[80] ECF No. 106 at 11.

[81] Nev. Rev. Stat. § 41.637(4).

1  shifts to Moreira-Brown to show "with prima facie evidence a probability of prevailing on [this]

2  claim."[82]

### 3.  *Moreira-Brown has not shown a probability of success on his defamation claim regarding the reporting on Ademiluyi's complaint.*

5  To establish a prima facie[83] case of defamation, "a plaintiff must prove: (1) a false and

6  defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to a

7  third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages."[84]

8  Moreira-Brown contends that the reporting about Ademiluyi's lawsuit is actionable because "he

9  is accused of a sexual criminal act by a person who did not witness anything" and because the

10  "alleged victim did not confirm such conduct."[85]  But this theory fails for the reasons I

11  articulated in the 2017 order and which are unaffected by *Patin*: "He has not demonstrated that

12  the [media defendants] made any false statement" because, even though he "vehemently denies

13  the accusations in Ademiluyi's complaint[,] . . . the article does not level the rape-drug and

14  sexual-assault accusations against Moreira-Brown; it summarizes those allegations that

15  Ademiluyi made in her complaint."[86]

16

---

17  [82] *Rosen*, 453 P.3d at 1123 (quoting Nev. Rev. Stat. 41.660(3)(b)).

18  [83] The parties dispute whether the older clear-and-convincing evidence or the newer prima-facie-evidence standard applies.  The appropriate standard may be "failure to state a claim" under Federal Rule of Evidence 12.  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.) (holding that "when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply [the FRCP 12(b)(6)] standard and consider whether a claim is properly stated"), *amended*, 897 F.3d 1224 (9th Cir. 2018).  Moreira-Brown's claim as to the statements in the complaint fails all these standards.

21  [84] *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993).

22  [85] ECF No. 106 at 12.

23  [86] ECF No. 75 at 15–16; *see Lubin v. Kunin*, 17 P.3d 422, 426 (Nev. 2001) (holding that "the district court correctly found that merely publishing the fact that a lawsuit alleging child abuse was filed would not be actionable").

1    Even if Ademiluyi's allegations are false and defamatory, this does not result in liability

2  for the media defendants.  As I also held in my prior order,[87] the reporting about these

3  allegations is immunized by the fair-reporting privilege as the "article offers a fair and true report

4  of Ademiluyi's lawsuit."[88]  So Moreira-Brown cannot make out a prima facie case of defamation

5  with respect to the reporting on Ademiluyi's complaint,[89] and Nevada's anti-SLAPP protection

6  applies.

7    **C.    Though the report of the 1998 Congressional-bid derailment is not protected**
       **by Nevada's anti-SLAPP statute, Moreira-Brown fails to state a defamation**
8      **claim based on it.**

9    Aside from reporting on Ademiluyi's allegations, the article contains one other statement

10  that Moreira-Brown challenges: "Moreira-Brown, 59, has faced rape allegations in the past.  His

11  1998 campaign for a seat in the U.S. House of Representatives from New York was derailed

12  after a different woman accused him of rape, though a grand jury later declined to indict him."[90]

13

---

14  [87] These conclusions are also unaffected by *Patin* and are incorporated herein.

15  [88] ECF No. 75 at 16–17; *see Sahara Gaming Corp. v. Culinary Workers Union Loc.*, 984 P.2d at
    168 (holding that, because the "alleged defamatory statements were a fair and accurate report of
16  a judicial proceeding, they are absolutely privileged, and the material recited will not support a
    defamation suit even if the statements were made maliciously and with knowledge of their
17  falsity").

18  [89] Moreira-Brown argues that the defendants' motion should be treated as one for summary
    judgment because "the [d]efendants appear to challenge the factual sufficiency of the
    complaint."  ECF No. 106 at 14 (citing *Planned Parenthood*, 890 F.3d at 834 (holding that
19  "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the
    Federal Rule of Civil Procedure 56 standard will apply" and "discovery must be allowed"),
20  *amended*, 897 F.3d 1224 (9th Cir. 2018)).  But, as the defendants point out, he does not dispute
    whether the defendants are incorrectly reporting the allegations; he merely disputes Ademiluyi's
21  allegations and whether the article is protected by Nevada's anti-SLAPP statute.  ECF No. 107 at
    7.  So I evaluate this motion under the motion-to-dismiss standard.  *Planned Parenthood*, 890
22  F.3d at 834 ("[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a
    claim, a district court should apply the [motion-to-dismiss] standard and consider whether a
23  claim is properly stated."), *amended*, 897 F.3d 1224 (9th Cir. 2018).

[90] ECF No. 7-1 at 4.

18

The media defendants argue that this statement is shielded by NRS 41.637(4) as "[i]t cannot be reasonably disputed that attorney misconduct is a matter of public concern," citing the Supreme Court of Nevada's opinion in *Abrams v. Sanson*.[91]  But *Abrams* is inapposite, as it deals with an attorney's *courtroom* conduct.[92]  In that case, the Supreme Court of Nevada considered articles posted by an attorney showcasing and discussing another attorney's behavior in court and practice of moving to seal cases.[93]  The Court held that the articles were protected under NRS 41.637(4) because they "depict[ed] and criticize[d] [the attorney's] behavior in court and towards [the judge], which directly connects to the public's interest in an attorney's *courtroom conduct*."[94]  It reasoned that "[t]he public has an interest in an attorney's *courtroom conduct* that is not mere curiosity, as it serves as a warning to both potential and current clients looking to hire or retain the lawyer."[95]  For that proposition, the Court approvingly cited multiple cases holding that the public has an interest in attorneys' conduct as it relates to their performance and conduct as an attorney.[96]

Here, by contrast, the statement at issue relates to Moreira-Brown's performance not as an attorney—let alone his "courtroom conduct"—but as a would-be political figure 16 years earlier in a Congressional district thousands of miles from Nevada.  Because there is not

---

[91] ECF No. 101 at 6.

[92] *Abrams v. Sanson*, 458 P.3d 1062, 1064 (Nev. 2020).

[93] *Id.* at 1064–65.

[94] *Id.* at 1067 (emphasis added).

[95] *Id.* at 1066 (emphasis added).

[96] *Id.*

1  sufficient "closeness between the challenged statement[] and the asserted public interest" in

2  attorney misconduct,[97] NRS 41.637(4) does not shield this statement.

3        This remaining portion of the defamation claim nevertheless must be dismissed because it

4  fails to state a claim upon which relief may be granted.  Actionable defamation requires "a

5  publication of a false statement of fact,"[98] but Moreira-Brown does not deny the truth of this

6  report.[99]  Indeed, he pleads himself out of a defamation claim based on this statement.  Though

7  the complaint is rife with countless conclusory allegations that all aspects of the article are false,

8  defamatory, reckless, and malicious, the facts that he alleges about the derailed-campaign report

9  do not support its falsity.  Moreira-Brown alleges in paragraph 30 of his complaint that

10  "Defendant newspaper further defamed the plaintiff by repeating an allegation against plaintiff

11  from a primary campaign almost twenty years earlier, knowing that said allegation did not result

12  in any criminal indictment and was not confirmed or corroborated in any manner whatsoever."[100]

13  But the article did not report that the earlier sexual-assault accusation was valid, confirmed, or

14  corroborated—just that it was made and derailed his campaign, facts that Moreira-Brown does

15  not allege to be false.  And in an affidavit in support of his opposition to the media-defendants'

16  original motion to dismiss, he stated that he was "falsely accused in 1998," suggesting that he

17  did, in fact, face such allegations in 1998.[101]  He neither alleges, nor has argued in his briefing,

18  that his campaign was not derailed by that allegation.  So I find that Moreira-Brown fails to state

19

20  [97] *Shapiro*, 389 P.3d at 268.

    [98] *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 87 (Nev. 2002).

21
    [99] *See* ECF No. 75 at 18 (incorporated herein by reference); *see also Lubin*, 17 P.3d at 426
22  (holding that publishing the fact that a lawsuit alleged child abuse was not actionable
    defamation).

23  [100] ECF No. 1 at ¶ 30.

    [101] ECF No. 25 at 6, ¶ 14.

a defamation claim based on any portion of the article not shielded by NRS 41.637(4) and that this claim could not be saved by amendment.  So I dismiss this claim in its entirety and close this case.

### Conclusion

IT IS THEREFORE ORDERED THAT Moreira-Brown's motion for reconsideration **[ECF No. 99] is DENIED**.

IT IS FURTHER ORDERED THAT the portion of my prior dismissal order [ECF No. 75 at § (B)(1)(a)] in which I found that the defamation claim is barred by NRS 41.637(3) and any conclusions based on that finding are VACATED; instead, the media defendants' motion to dismiss **[ECF No. 101] is GRANTED** on the alternate bases stated herein.

IT IS FURTHER ORDERED THAT Moreira-Brown's motion for an extension of time to respond to the defendants' motion to dismiss **[ECF No. 104] is DENIED**.

The Clerk of Court is directed to **ENTER JUDGMENT** and **CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
January 3, 2023